**Keith Altman**
**The Law Office of Keith Altman**
**33228 West 12 Mile Road, Suite 375**
**Farmington Hills, MI 48334**
**(516)456-5885**
**kaltman@lawampmmt.com**

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **MICHAEL THAYYIL,**<br><br>    **PLAINTIFF,**<br><br>    **V.**<br><br>**INDIANA STATE UNIVERSITY, INDIANA STATE UNIVERSITY BOARD OF TRUSTEES, JOHN DOES 1-25**<br><br>    **DEFENDANTS.** | **COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**<br><br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S COMPLAINT FOR VIOLATIONS OF DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, TITLE III OF THE AMERICANS WITH DISABILITIES ACT, SECTION 504 OF THE REHABILITATION ACT, AND BREACH OF CONTRACT**

NOW COMES Plaintiff, **MICHAEL THAYYIL,** by and through his attorneys, The Law Office of Keith Altman, and for his Complaint against Defendant, hereby states the following:

## BACKGROUND

1.      This action is seeking declaratory and injunctive relief for Defendant's violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution, Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act. Defendants are also responsible for breach of contract.

2.      Defendants' actions, set forth more fully herein, violate Title III of the Americans with Disabilities Act (ADA, ADA-AA), 42 U.S.C. §12101, *et seq.*

3.      On July 3, 2020, Michael Thayyil was dismissed from his fieldwork placement site as a part of his Occupational Therapy program at Indiana State University. As a result of this dismissal, he was dismissed from the Occupational Therapy program. The academic decision to dismiss Thayyil was arbitrary and unfair. Thayyil received inadequate training during his fieldwork and was not informed of the issues with his performance prior to his dismissal.

## PARTIES

4.      Plaintiff Michael Thayyil ("Thayyil") is a citizen and domiciliary of the State of Indiana. At all times relevant to this Complaint, Plaintiff is a student in the Occupational Therapy program at Indiana State University.

5.      Defendant, Indiana State University ("ISU"), a public institution of higher learning is a citizen and domiciliary of the State of Indiana. IU has its principal place of business in Indiana.

6.      Defendant Indiana State University Board of Trustees ("Board of Trustees") is a political subdivision of Indiana State University. The Board of Trustees is responsible for the University's administration and policymaking.

7.      Defendants John Does 1-25 are individuals who at all times were acting in their individual capacities.

## JURISDICTION AND VENUE

8.      This action seeks damages and injunctive relief under 42 U.S.C. § 1983. As such this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331.

9.      This action also arises under The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Amendments Act (ADA-AA) with an

effective date of January 1, 2009, which, at Title II of the ADA, prohibits discrimination in the provision of public services. Section 202 of the Act, 42 U.S.C. §12132 (Supp.1991), the Rehabilitation Act of 1973, §§504 and 505, as amended, 29 U.S.C.A. §§794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the ADA and §504 prohibit retaliation against persons with disabilities.

10.    In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claim for breach of contract.

11.    Venue properly lies within this District under 28 U.S.C. § 1391(b). The named defendants perform their official duties in this District, and the events and omissions giving rise to plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

### Events Leading up to Thayyil's Dismissal from ISU

12.    Thayyil was an Occupational Therapy Student at ISU from May 30, 2017 to July 3, 2020.

13.    ISU's occupational therapy program requires students to perform a "Fieldwork II rotation."

14.    ISU's student handbook refers to "Level II Fieldwork" as:

> carefully crafted opportunities for the student to practice
> in an authentic OT environment while supervised by an

Occupational Therapist with at least one year of professional experience at the Fieldwork Site.

15.    On June 6, 2020 Thayyil moved from Indiana to Sarasota, Florida in order to complete his Level II Fieldwork at the Sensory Solutions clinic under supervision of Jen Kiellach ("Kiellach.")

16.    Thayyil was treated in an unprofessional manner by the ISU faculty throughout the process of securing a level II placement.

17.    Before securing his placement at Sensory Solutions clinic, he had confirmed a different fieldwork level II site with his fieldwork advisor, Megan Steward. Steward failed to timely inform Thayyil that the site he secured and accepted would not fulfill the level II placement requirement.

18.    This lack of timely communication caused Thayyil a great deal of anxiety and inconvenience.

19.    Thayyil was also not given adequate notice regarding his fieldwork placement as Meghan Steward, the fieldwork advisor, failed to notify him that his supervisor had confirmed his start date of June 1.

20.    Because of this short notice, Thayyil was not given appropriate time to find housing, manage his medical needs, and exacerbated his social anxiety condition.

21.     This oversight of failing to relay necessary information became a theme amongst the faculty as they expected complete professionalism from their students but did not demonstrate the same professionalism in return.

22.     From the beginning of his time at Sensory Solutions, Thayyil was treated differently than the five other students at his placement by Kiellach, his fieldwork supervisor.

23.     On his first day of fieldwork, Thayyil informed Killach that he was going to be late due to an alarm malfunction.

24.     There were five other students at this placement who received training and went through an orientation process.

25.     Thayyil was the only student who did not receive any training or formal orientation process from Kiellach when he arrived at the site. In fact, Thayyil had to seek out his own orientation opportunities.

26.     The lack of orientation or training caused Thayyil to be uninformed about many pivotal processes and practices of the site such as documentation, how to write/source evaluations, etc. Because Thayyil never received training on these matters, his only understanding of how to complete documentation and source evaluations was based on the information provided to him by the other students.

27.     Kiellach also had provided the five other students at the site with access to integral "CoreConnect" resources that they would reference constantly during

treatment session. Despite his multiple inquiries about when he would be able to watch the videos, Thayyil was the only student who was never provided access to that resource.

28.     As a result of not having access to the "CoreConnect" resource, Thayyil was seriously disadvantaged during treatment sessions.

29.     Thayyil was forced to seek out orientation opportunities as Kiellach indicated that she assumed Thayyil had been given orientations in areas he had not and provided those orientations to other students.

30.     Despite Kiellach's representation of herself as "always accessible," she was unwilling to provide Thayyil with adequate training that each of the other students had received.

31.     Kiellach had even stated that "had this been any other time I would take you by the hand and walk you through everything to make sure you succeed but right now I have parents constantly calling with concerns about COVID-19 and I'm worried about making sure my clinic stays open," inferring that COVID-19 was the reason for Thayyil's lack of training.

32.     Thayyil also felt a level of alienation because two of the other students that were working at the clinic were people whom the supervisor, Jen Kiellach, had prior relationships with. Kiellach would eat lunch in her office with one of the other students and was also friends with several students on Facebook.

33.     However, when Thayyil requested Kiellach as a friend on Facebook, she informed him that it is against her policy to accept students as friends on Facebook and the only reason that she was friends with the other students is because she had previous work relationships with them prior to fieldwork.

34.     Kiellach held Thayyil to a different standard and was treated differently than the other students in the placement.

35.     Kiellach even informed Thayyil during a conversation regarding his coming in late to work, that if he was a student that Kiellach had known prior to his fieldwork, she would not have "batted an eye" because he would have already "demonstrated reliability."

36.     Since Thayyil's first day working at the Sensory Solutions Clinic, Kiellach had minimized the severity of the COVID-19 pandemic and repeatedly talked about how hospitalizations were decreasing and how things would return to normal.

37.     Although Kiellach's approach to the COVID-19 pandemic was hurtful to Thayyil due to the fact that he had relatives who have been affected by the pandemic, he did not object and tried his best to remain professional.

38.     On June 29, 2020, Thayyil was informed that a child's parent that was present at the clinic without a mask was confirmed COVID-19 positive and that two

other students who were working with the child of that COVID-19 positive parent were going to be tested and would not return to work until they got their results back.

39.    Kiellach gave Thayyil the option of returning to work the next day or waiting and quarantining himself until the other students got their test results back.

40.    During this conversation, Kiellach also emphasized that the conversation regarding Thayyil's lack of professionalism should not influence his decision, as his health should take priority.

41.    Thayyil decided to get tested for COVID-19 and to stay quarantined in order to maintain his good health and to ensure that he would not put others at risk, especially children whom he worked with at the clinic with developing immune systems.

42.    Thayyil later informed Kiellach of his decision to remain quarantined and informed her that he would be more than happy to help with any clerical work.

43.    The following day, Kiellach communicated to Thayyil that she did not have documentation for his patients from last week, even though she signed off on his weekly evaluation form indicating that Thayyil had fulfilled his requirements for the previous week. Thayyil had all of his prior documentation saved and sent it to Kiellach timely.

44.    Despite not being properly trained on how to write notes or document treatment, Kiellach requested that Thayyil was not completing his clinical notes correctly and that he needed to redo them in accordance with procedure.

45.    Thayyil was taken off guard at this request due to the fact that Kiellach had not indicated any issues with his documentation when he had shown Kiellach his notes previously and asked her if they looked alright.

46.    Kiellach continued to act in an unprofessional manner throughout Thayyil's placement by accusing him of lying about getting tested for COVID-19.

47.    On July 3, 2020 Thayyil accidently sent a text message, met for someone else, to Killach which he admits was inappropriate. This text included a screenshot of Thayyil's messages with Kiellach and Thayyil's use of explicit language saying that he sent his notes as a "fuck you."

48.    Thayyil quickly and repeatedly apologized to Kiellach and informed her that the explicit text message was not met for Kiellach.

**Disciplinary Action Against Plaintiff Thayyil**

49.    On July 3, 2020, Michael Thayyil was notified by Meghan Steward, Fieldwork Coordinator for the OT program, that he was no longer allowed to return to his fieldwork site, Sensory Solutions in Sarasota Florida, based on his "inadequate performance and professional concerns."

50.    On July 10, 2020, Thayyil received a letter from Paula Jarrard, Associate Professor and Program Director of the Occupational Therapy program informing him that he was as a result of his dismissal from his fieldwork site, he was also dismissed from the OT program.

51.    While Kiellach represented that she had submitted detained documentation about Thayyil's lack of professional behaviors/performance issues, none of the documents that were referenced in Thayyil's letter of dismissal validate that Kiellach had submitted any prior documentation regarding Thayyil's performance.

52.    Further, the documentation referenced many attempts to work with Thayyil regarding issues with his behavior at the site. However, the only time that Killach had brought any issues to Thayyil's attention was on his very last day of fieldwork.

53.    The only time any issues were brought to Thayyil's attention was following his decision to get tested for COVID-19 and to quarantine.

54.    The Student Handbook allows a fieldwork educator to "dismiss the student at any time during the experience for professional behavior infractions or substandard performance."

55.     Per the policies regarding dismissal from a Fieldwork II rotation as outlined in the ISU Fieldwork manual and ISU Student Handbook, Thayyil was automatically dismissed from the OT program.

56.     Thayyil was dismissed from his Fieldwork site and OT program based on performance concerns that had not been brought to his attention until he made the decision to quarantine during the COVID-19 pandemic.

### Thayyil's Disability

57.     Thayyil has a diagnosed social anxiety disorder that affects his ability to effectively communicate with others.

58.     ISU was made aware of Thayyil's disability.

59.     Thayyil further has mentioned to faculty members in the Occupational Therapy program about his social anxiety disorder and how it has affected his ability to effectively communicate certain issues and advocate for himself.

60.     Thayyil was not provided vital information regarding his start date and was not provided with adequate time to secure housing or manage his medical needs before arriving in Sarasota, thus exacerbating his social anxiety.

61.     The Monday of the week that Thayyil got dismissed from the site, he had been late to work. He also noted that he had social anxiety which preluded him from having conversations in situations of conflict. His supervisor failed to take Thayyil's social anxiety into account.

62.     Despite both ISU's notice of Plaintiff's disability and Plaintiff's disclosure of his disability, Kiellach documented "poor communication" as one of the reasons for his dismissal.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### FIFTH AND FOURTEENTH AMENDMENT
### (Against Individual Defendants)

63.     Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

64.     The Fifth and Fourteenth Amendments of the U.S. Constitution provides, in pertinent part, that "no person shall be deprived of life, liberty, or property without due process of law."

65.     As such, Plaintiff was entitled to a fair and impartial investigation of the allegations lodged against him in accordance with the policies established concerning removal from a field work placement.

66.     The Defendants were aware that Plaintiff was entitled to a fair and impartial determination of the merits of the charges against Plaintiff.

67.     Plaintiff was dismissed from his fieldwork site as a result of an arbitrary evaluation of his conduct that was not brought to Plaintiff's attention until he was dismissed.

68.     Further Plaintiff was dismissed on conduct that was exclusive only to him as his supervisor informed him that if she had worked with him before, his lateness would not be an issue.

69.     Plaintiff has been denied his due process rights by Defendant in violation of the Fifth and Fourteenth Amendments in that:

> a.  Thayyil was treated unfairly in the academic decision process and was dismissed from the OT program in an arbitrary and capricious manner. He was given no notice of poor performance until he had been at the placement for over four weeks.
>
> b.  Thayyil was not given notice of grounds for dismissal until he received the letter that he was removed from the program.
>
> c.  Thayyil did not receive the benefit of a hearing before his punishment of dismissal was imposed.
>
> d.  Thayyil's dismissal was based on his decision to quarantine during the COVID-19 pandemic and had no basis in fact.

70.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress as well as serious threats to his chosen career as an Occupational Therapist.

71.     The actions of the Defendants violated the provisions of 42 U.S.C. §1983 in that they knowingly and willfully violated the civil rights of Plaintiff.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT
### (Against ISU)

72.    Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

73.    Plaintiff and Defendant entered into a contract by which Defendant was offered admission to ISU's Occupational Therapy Program and for which Plaintiff accepted ISU's offer and attended ISU's Occupational Therapy program.

74.    There was a mutual exchange of consideration by which Plaintiff attended the University involving payments and expenditure of time and ISU made its services available to Plaintiff including educational opportunities.

75.     As part of the contract was the existence of policies set forth by ISU. As a condition of attending ISU, Plaintiff and ISU were both expected to be bound by those policies, included within those policies were policies concerning adequate grounds for dismissal as well as disability services.

76.    These policies were part of the bargain between Plaintiff and ISU. Without agreeing to abide by these policies, Plaintiff would not have been permitted to attend ISU.

77.    Defendants breached the contract as it failed to investigate grounds for Plaintiff's dismissal in a fair, nonarbitrary way.

78.    Defendants also breached the contract by not properly providing Thayyil with services related to his disability.

79.    As a result of Defendant's breach of the contract, Plaintiff has been damaged in that he has been forced to expend significant time and resources defending the allegations that resulted in his dismissal.

**THIRD CAUSE OF ACTION**
**VIOLATION OF TITLE II ADA**
**(Against all Defendants)**

80.    Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

81.    Plaintiff suffers from a chronic mental health condition as a result of being diagnosed with social anxiety.

82.    Plaintiff has a serious medical need, social anxiety, and is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

83.    The ADA and its implementing regulations require that alternative services and modifications be made to qualified individuals with a disability.

84.    At all relevant times, Defendants were fully aware of Plaintiff's disability.

85.    Plaintiff has been denied reasonable accommodations for his documented social anxiety disorder.

86.    As a result of Defendants denial of reasonable accommodations to Plaintiff, Defendants violated the ADA by discriminating against Plaintiff in several ways, including without limitation, the following:

   a.  Failing to recognize that Plaintiff had an anxiety disorder due to social anxiety when ISU was on notice of his disability.

   b.  Failing to provide counseling to Plaintiff to assist with his disability.

   c.  Failing to provide Plaintiff with more time to complete documentation and other clinic assignments.

   d.  Denying Plaintiff the equal/same opportunity to receive an education as a medical student as those without a disability.

87.    Defendants have discriminated against Plaintiff by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1).

88.    Defendants inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate employing 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

89.    As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff has sustained and continues to sustain injuries and damages.

## FOURTH CAUSE OF ACTION
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
### (Against all Defendants)

90.     Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

91.     Section 504 of the Rehabilitation Act, 29 U.S.C § 794, bars all federally funded entities (governmental or otherwise) from discriminating based on disability. Section 504 states, in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

92.     Defendant ISU receives federal financial assistance and is covered by Section 504.

93.     Plaintiff Thayil has an anxiety disorder, social anxiety, which interferes with his ability to effectively communicate certain issues and advocate for himself. Communication is a major life activity. Thus, social anxiety limits at least one of Plaintiff's major life activities.

94.    Because social anxiety substantially limits at least one of Thayyil's major life activities, Plaintiff is an individual with a disability under the Rehabilitation Act.

95.    Thayyil has demonstrated a history of success as a student with social anxiety and has even worked at other placement sites.

96.    The Rehabilitation Act and its implementing regulations require defendants administer programs/activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. § 41.51 and 45 C.F.R § 84.4.

97.    Plaintiff has been denied and excluded from the benefits of Defendants' educational program because Defendants have failed to make reasonable accommodations that meet Plaintiff's needs.

98.    As a result of Defendants denial and exclusion of Plaintiff from receiving reasonable accommodations commensurate with his social anxiety, Defendants violated the Rehabilitation Act in several ways, including without limitation the following:

    a.  Failing to act when Defendants knew of Plaintiff's social anxiety.

    b.  Failing to provide Plaintiff reasonable options to combat social anxiety during his placement such as more time to complete documentation and turn in assignments.

> c. Failing to provide counseling to Plaintiff to assist with his disability.
>
> d. Denying Plaintiff the equal/same opportunity to receive an education as a medical student as those without a disability.

99. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained and will continue to sustain injuries and damages.

## RELIEF REQUESTED

100. Wherefore the Plaintiff respectfully prays this Honorable Court will GRANT the following relief:

> a. For declaratory relief that Defendants conduct violated Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution
>
> b. Award the Plaintiff compensatory, general, and special damages as appropriate and as permitted by law.
>
> c. Award the Plaintiff punitive damages as appropriate and as permitted by law.
>
> d. Award the Plaintiff costs, fees, and expenses as appropriate.
>
> e. Grant the Plaintiff injunctive relief as appropriate.
>
> f. Provide any other Relief this Court might deem fair, just, and equitable

Date: 01/20/2021

Respectfully Submitted,

*/s/Keith Altman*
Keith Altman
The Law Office of Keith Altman
33228 West 12 Mile Road - Suite 375
Farmington Hills, MI 48331
516-456-5885
kaltman@lawampmmt.com