UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHAEL THAYYIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00165-JPH-MG |
| INDIANA STATE UNIVERSITY, | ) | |
| INDIANA STATE UNIVERSITY | ) | |
| BOARD OF TRUSTEES, JOHN | ) | |
| DOES 1-25, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT
AND ADDITIONAL DEFENSES**

Defendants, Indiana State University and Indiana State University Board of Trustees

(collectively "Defendants"), by counsel, for their Answer to Plaintiff's Complaint ("Complaint"),

respond as follows:

**BACKGROUND**

1.      This action is seeking declaratory and injunctive relief for Defendant's violations of

Plaintiff's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution,

Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act. Defendants

are also responsible for breach of contract.

**ANSWER:**    Defendants solely admit this action is seeking declaratory and injunctive

relief for alleged violations of the Fifth and Fourteenth Amendments of the U.S. Constitution,

Title III of the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act and

that Plaintiff is seeking relief for alleged breach of contract. Defendants deny any violation of

1

these laws or breach of contract, deny that Plaintiff is entitled to any relief, and deny any remaining allegations in paragraph 1 of the Complaint.

2.      Defendants' actions, set forth more fully herein, violate Title III of the Americans with Disabilities Act (ADA, ADA-AA), 42 U.S.C. §12101, *et seq*.

**ANSWER:**   Denied.

3.      On July 3, 2020, Michael Thayyil was dismissed from his fieldwork placement site as a part of his Occupational Therapy program at Indiana State University. As a result of this dismissal, he was dismissed from the Occupational Therapy program. The academic decision to dismiss Thayyil was arbitrary and unfair. Thayyil received inadequate training during his fieldwork and was not informed of the issues with his performance prior to his dismissal.

**ANSWER:**   Defendants solely admit that on July 3, 2020, Michael Thayyil was dismissed from his fieldwork placement site as a part of his participation in the Occupational Therapy program at Indiana State University and that he was dismissed from the Occupational Therapy program. Defendants deny the remaining allegations in paragraph 3 of the Complaint.

## PARTIES

4.      Plaintiff Michael Thayyil ("Thayyil") is a citizen and domiciliary of the State of Indiana. At all times relevant to this Complaint, Plaintiff is a student in the Occupational Therapy program at Indiana State University.

**ANSWER:**   Defendants solely admit Plaintiff was a student in the Occupational Therapy program at Indiana State University during the time relevant to the allegations in the Complaint. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 4 and, therefore, deny the same.

5.      Defendant, Indiana State University ("ISU"), a public institution of higher learning is a citizen and domiciliary of the State of Indiana. IU [sic] has its place of business in Indiana.

**ANSWER:**    Defendants solely admit Indiana State University is a state educational institution established under Ind. Code § 21-21-2 and is located in Indiana. Defendants deny the remaining allegations in paragraph 5 of the Complaint.

6.      Defendant Indiana State University Board of Trustees ("Board of Trustees") is a political subdivision of Indiana State University. The Board of Trustees is responsible for the University's administration and policymaking.

**ANSWER:**    Defendants solely admit that, pursuant to Ind. Code § 21-21-2-2, the Board of Trustees is a perpetual body corporate. Defendants deny the remaining allegations in paragraph 6 of the Complaint.

7.      Defendants John Does 1-25 are individuals who at all times were acting in their individual capacities.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 7 and, therefore, deny the same.

## JURISDICTION AND VENUE

8.      This action seeks damages and injunctive relief under 42 U.S.C. § 1983. As such this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331.

**ANSWER:**    Defendants solely admit this action is seeking damages and injunctive relief for alleged violations under 42 U.S.C. § 1983 and that this Court has subject matter jurisdiction over Plaintiff's purported claims under 28 U.S.C. § 1331. Defendants deny any violations that would support a claim under 43 U.S.C. § 1983; deny that Plaintiff is entitled to any relief; and deny any remaining allegations in paragraph 8 of the Complaint.

9.      This action also arises under The Americans with Disabilities Act of 1990 (ADA), Pub.L. No. 101-336, 104 Stat. 327 (1990), 42 U.S.C. §§ 12101 et seq., amended by the Americans with Disabilities Amendments Act (ADA-AA) with an effective date of January 1, 2009, which, at Title II of the ADA, prohibits discrimination in the provision of public services. Section 202 of the Act, 42 U.S.C. §12132 (Supp.1991), the Rehabilitation Act of 1973, §§504 and 505, as amended, 29 U.S.C.A. §§794 and 794a, including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the ADA and §504 prohibit retaliation against persons with disabilities.

**ANSWER:**      Defendants solely admit Plaintiff has asserted claims under the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973 (Section 504), that the definition of "disability" under Section 504 conforms to the definition of disability under the ADA, and that both the ADA and Section 504 prohibit retaliation against persons with disabilities. Defendants deny having violated the ADA or Section 504, deny that Plaintiff is entitled to any relief under either statute, and deny any remaining allegations in paragraph 9 of the Complaint.

10.      In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claim for breach of contract.

**ANSWER:**      Defendants solely admit that in accordance with 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's purported state law claim. Defendants deny breaching any contract, deny that Plaintiff is entitled to any relief, and deny any remaining allegations in paragraph 10 of the Complaint.

11.     Venue properly lies within this District under 28 U.S.C. § 1391(b). The named

defendants perform their official duties in this District, and the events and omissions giving rise

to plaintiffs' claims occurred in this District.

ANSWER:    Defendants admit venue properly lies within this District under 28 U.S.C.

§ 1391(b), but Defendants deny any violations of the law, breach of contract, or other acts giving

rise to Plaintiff's claims, and deny any remaining allegations in paragraph 11 of the Complaint.

**FACTUAL ALLEGATIONS**
**Events leading up to Thayyil's Dismissal from ISU**

12.     Thayyil was an Occupational Therapy Student at ISU from May 30, 2017 to July

3, 2020.

ANSWER:    Admitted.

13.     ISU's occupational therapy program requires students to perform a "Fieldwork II

rotation."

ANSWER:    Admitted.

14.     ISU's student handbook refers to "Level II Fieldwork" as:

> carefully crafted opportunities for the student to practice in an
> authentic OT environment while supervised by an Occupational
> Therapist with at least one year of professional experience at the
> Fieldwork Site.

ANSWER:    Admitted.

15.     On June 6, 2020 Thayyil moved from Indiana to Sarasota, Florida in order to

complete his Level II Fieldwork at the Sensory Solutions clinic under supervision of Jen Kiellach

("Kiellach.")

ANSWER:    Defendants admit solely that Plaintiff participated in Level II Fieldwork at

the Sensory Solutions clinic in Sarasota, Florida under the supervision of Jen Kiellach.

Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 15 and, therefore, deny the same.

16.    Thayyil was treated in an unprofessional manner by the ISU faculty throughout the process of securing a level II placement.

**ANSWER:**    Denied.

17.    Before securing his placement at Sensory Solutions clinic, he had confirmed a different fieldwork level II site with his fieldwork advisor, Megan Steward. Steward failed to timely inform Thayyil that the site he secured and accepted would not fulfill the level II placement requirement.

**ANSWER:**    Denied.

18.    This lack of timely communication caused Thayyil a great deal of anxiety and inconvenience.

**ANSWER:**    Defendants deny a lack of timely communication and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 18 and, therefore, deny the same.

19.    Thayyil was also not given adequate notice regarding his fieldwork placement as Meghan Steward, the fieldwork advisor, failed to notify him that his supervisor had confirmed his start date of June 1.

**ANSWER:**    Denied**.**

20.    Because of this short notice, Thayyil was not given appropriate time to find housing, manage his medical needs, and exacerbated his social anxiety condition.

**ANSWER:**    Defendants deny Plaintiff was provided short notice and that he was not given appropriate time to find housing. Defendants are without knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 and, therefore, deny the same.

21.     This oversight of failing to relay necessary information became a theme amongst the faculty as they expected complete professionalism from their students but did not demonstrate the same professionalism in return.

**ANSWER:**   Denied.

22.     From the beginning of his time at Sensory Solutions, Thayyil was treated differently than the five other students at his placement by Kiellach, his fieldwork supervisor.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 22 and, therefore, deny the same.

23.     On his first day of fieldwork, Thayyil informed Kiellach that he was going to be late due to an alarm malfunction.

**ANSWER:**   Defendants admit that on Plaintiff's first day of fieldwork Plaintiff was late and that he informed Kiellach that his lateness was due to an alarm malfunction. Defendants deny the remaining the allegations in paragraph 23 of the Complaint.

24.     There were five other students at this placement who received training and went through an orientation process.

**ANSWER:**   Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 and, therefore, deny the same.

25.     Thayyil was the only student who did not receive any training or formal orientation process from Kiellach when he arrived at the site. In fact, Thayyil had to seek out his own orientation opportunities.

**ANSWER:**    Defendants specifically deny Plaintiff did not receive training and orientation from Kiellach for his fieldwork placement. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 25 and, therefore, deny the same.

26.    The lack of orientation or training caused Thayyil to be uninformed about many pivotal processes and practices of the site such as documentation, how to write/source evaluations, etc. Because Thayyil never received training on these matters, his only understanding of how to complete documentation and source evaluations was based on the information provided to him by the other students.

**ANSWER:**    Defendants specifically deny Plaintiff did not receive training on appropriate documentation and are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 26 and, therefore, deny the same.

27.    Kiellach also had provided the five other students at the site with access to integral "CoreConnect" resources that they would reference constantly during treatment session. Despite his multiple inquiries about when he would be able to watch the videos, Thayyil was the only student who was never provided access to that resource.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 27 and, therefore, deny the same.

28.    As a result of not having access to the "CoreConnect" resource, Thayyil was seriously disadvantaged during treatment sessions.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 and, therefore, deny the same.

29.     Thayyil was forced to seek out orientation opportunities as Kiellach indicated that she assumed Thayyil had been given orientations in areas he had not and provided those orientations to other students.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and, therefore, deny the same.

30.     Despite Kiellach's representation of herself as "always accessible," she was unwilling to provide Thayyil with adequate training that each of the other students had received.

**ANSWER:**     Defendants deny Kiellach was unwilling to provide Plaintiff with adequate training. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30 and, therefore, deny the same.

31.     Kiellach had even stated that "had this been any other time I would take you by the hand and walk you through everything to make sure you succeed but right now I have parents constantly calling with concerns about COVID-19 and I'm worried about making sure my clinic stays open," inferring that COVID-19 was the reason for Thayyil's lack of training.

**ANSWER:**     Defendants deny Plaintiff lacked training. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 31 and, therefore, deny the same.

32.     Thayyil also felt a level of alienation because two of the other students that were working at the clinic were people whom the supervisor, Jen Kiellach, had prior relationships with. Kiellach would eat lunch in her office with one of the other students and was also friends with several students on Facebook.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 and, therefore, deny the same.

33.     However, when Thayyil requested Kiellach as a friend on Facebook, she informed him that it is against her policy to accept students as friends on Facebook and the only reason that she was friends with the other students is because she had previous work relationships with them prior to fieldwork.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 and, therefore, deny the same.

34.     Kiellach held Thayyil to a different standard and was treated differently than the other students in the placement.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 and, therefore, deny the same.

35.     Kiellach even informed Thayyil during a conversation regarding his coming in late to work, that if he was a student that Kiellach had known prior to his fieldwork, she would not have "batted an eye" because he would have already "demonstrated reliability."

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35 and, therefore, deny the same.

36.     Since Thayyil's first day working at the Sensory Solutions Clinic, Kiellach had minimized the severity of the COVID-19 pandemic and repeatedly talked about how hospitalizations were decreasing and how things would return to normal.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 and, therefore, deny the same.

37.     Although Kiellach's approach to the COVID-19 pandemic was hurtful to Thayyil due to the fact that he had relatives who have been affected by the pandemic, he did not object and tried his best to remain professional.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 and, therefore, deny the same.

38.     On June 29, 2020, Thayyil was informed that a child's parent that was present at the clinic without a mask was confirmed COVID-19 positive and that two other students who were working with the child of that COVID-19 positive parent were going to be tested and would not return to work until they got their results back.

**ANSWER:**     Defendants admit that on or around June 29, 2020, Plaintiff was notified that an individual present at the clinic was confirmed COVID-19 positive. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 38 and, therefore, deny the same.

39.     Kiellach gave Thayyil the option of returning to work the next day or waiting and quarantining himself until the other students got their test results back.

**ANSWER:**     Defendants admit Kiellach gave Plaintiff the option to decide what he felt was best for him. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 39 and, therefore, deny the same.

40.     During this conversation, Kiellach also emphasized that the conversation regarding Thayyil's lack of professionalism should not influence his decision, as his health should take priority.

**ANSWER:**     Defendants admit that on or around this time Kiellach discussed with Plaintiff his lack of professionalism. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 40 and, therefore, deny the same.

41.     Thayyil decided to get tested for COVID-19 and to stay quarantined in order to maintain his good health and to ensure that he would not put others at risk, especially children whom he worked with at the clinic with developing immune systems.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 and, therefore, deny the same.

42.     Thayyil later informed Kiellach of his decision to remain quarantined and informed her that he would be more than happy to help with any clerical work.

**ANSWER:**    Defendants admit Plaintiff notified Kiellach of his decision to remain quarantined. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 42 and, therefore, deny the same.

43.     The following day, Kiellach communicated to Thayyil that she did not have documentation for his patients from last week, even though she signed off on his weekly evaluation form indicating that Thayyil had fulfilled his requirements for the previous week. Thayyil had all of his prior documentation saved and sent it to Kiellach timely.

**ANSWER:**    Defendants admit that around this time Kiellach communicated to Plaintiff that she did not have documentation from his patients from the previous week. Defendants deny Plaintiff sent his documentation to Kiellach timely. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 43 and, therefore, deny the same.

44.     Despite not being properly trained on how to write notes or document treatment, Kiellach requested that Thayyil was not completing his clinical notes correctly and that he needed to redo them in accordance with procedure.

**ANSWER:**    Defendants admit Plaintiff was not completing his clinical notes correctly and that Kiellach requested that he redo them in accordance with procedure. Defendants deny Plaintiff was not properly trained on how to write notes or document treatment. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 and, therefore, deny the same.

45.    Thayyil was taken off guard at this request due to the fact that Kiellach had not indicated any issues with his documentation when he had shown Kiellach his notes previously and asked her if they looked alright.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 and, therefore, deny the same.

46.    Kiellach continued to act in an unprofessional manner throughout Thayyil's placement by accusing him of lying about getting tested for COVID-19.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 and, therefore, deny the same.

47.    On July 3, 2020 Thayyil accidently sent a text message, met [sic] for someone else, to Killach [sic] which he admits was inappropriate. This text included a screenshot of Thayyil's messages with Kiellach and Thayyil's use of explicit language saying that he sent his notes as a "fuck you."

**ANSWER:**    Defendants admit that on July 3, 2020, Plaintiff sent an inappropriate text message to Kiellach that included a screenshot of Plaintiff's messages with Kiellach and Plaintiff's use of explicit language saying that he sent his notes as a "fuck you." Defendants acknowledge that Plaintiff admits in this paragraph that the text message was inappropriate, and are without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 47 and, therefore, deny the same.

48.     Thayyil quickly and repeatedly apologized to Kiellach and informed her that the explicit text message was not met [sic] for Kiellach.

**ANSWER:**   Defendants admit Plaintiff sent a text message to Kiellach apologizing and informing her that the text message was not meant for her. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 and, therefore, deny the same.

**Disciplinary Action Against Plaintiff Thayyil**

49.     On July 3, 2020, Michael Thayyil was notified by Meghan Steward, Fieldwork Coordinator for the OT program, that he was no longer allowed to return to his fieldwork site, Sensory Solutions in Sarasota Florida, based on his "inadequate performance and professional concerns."

**ANSWER:**   Admitted.

50.     On July 10, 2020, Thayyil received a letter from Paula Jarrard, Associate Professor and Program Director of the Occupational Therapy program informing him that he was as a result of his dismissal from his fieldwork site, he was also dismissed from the OT program.

**ANSWER:**   Admitted.

51.     While Kiellach represented that she had submitted detained [sic] documentation about Thayyil's lack of professional behaviors/performance issues, none of the documents that were referenced in Thayyil's letter of dismissal validate that Kiellach had submitted any prior documentation regarding Thayyil's performance.

**ANSWER:**   Denied.

52.     Further, the documentation referenced many attempts to work with Thayyil regarding issues with his behavior at the site. However, the only time that Kiellach had brought any issues to Thayyil's attention was on his very last day of fieldwork.

**ANSWER:**     Defendants solely admit that the documentation referenced many attempts to work with Plaintiff. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52 and, therefore, deny the same.

53.     The only time any issues were brought to Thayyil's attention was following his decision to get tested for COVID-19 and to quarantine.

**ANSWER:**     Denied.

54.     The Student Handbook allows a fieldwork educator to "dismiss the student at any time during the experience for professional behavior infractions or substandard performance."

**ANSWER:**     Admitted.

55.     Per the policies regarding dismissal from a Fieldwork II rotation as outlined in the ISU Fieldwork manual and ISU Student Handbook, Thayyil was automatically dismissed from the OT program.

**ANSWER:**     Admitted.

56.     Thayyil was dismissed from his Fieldwork site and OT program based on performance concerns that had not been brought to his attention until he made the decision to quarantine during the COV1D-19 pandemic.

**ANSWER:**     Denied.

**Thayyil's Disability**

57.     Thayyil has a diagnosed social anxiety disorder that affects his ability to effectively communicate with others.

**ANSWER:**   Defendants admit Plaintiff informed ISU personnel that he had been diagnosed with social anxiety disorder and that he believed it affects his ability to communicate effectively with faculty. Defendants are without knowledge or information sufficient to form a belief as to the truth of remaining the allegations in paragraph 57 of the Complaint and, therefore, deny the same.

58.    ISU was made aware of Thayyil's disability.

**ANSWER:**    Defendants solely admit Plaintiff informed ISU personnel that he had been diagnosed with social anxiety disorder. Defendants are without knowledge or information sufficient to form a belief as to the truth of remaining the allegations in paragraph 58 of the Complaint and, therefore, deny the same.

59.    Thayyil further has mentioned to faculty members in the Occupational Therapy program about his social anxiety disorder and how it has affected his ability to effectively communicate certain issues and advocate for himself.

**ANSWER:**    Defendants solely admit Plaintiff mentioned to some faculty members in the Occupational Therapy program that he has social anxiety disorder and that affects his ability to communicate. Defendants deny the remaining allegations in paragraph 59 of the Complaint.

60.    Thayyil was not provided vital information regarding his start date and was not provided with adequate time to secure housing or manage his medical needs before arriving in Sarasota, thus exacerbating his social anxiety.

**ANSWER:**    Denied.

61.    The Monday of the week that Thayyil got dismissed from the site, he had been late to work. He also noted that he had social anxiety which preluded him from having conversations in situations of conflict. His supervisor failed to take Thayyil's social anxiety into account.

**ANSWER:**     Defendants admit Plaintiff was late to work during the week in which he was dismissed from the site and that Plaintiff informed Kiellach that he did not like conflict. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 61 of the Complaint and, therefore, deny the same.

62.     Despite both ISU's notice of Plaintiff's disability and Plaintiff's disclosure of his disability, Kiellach documented "poor communication" as one of the reasons for his dismissal.

**ANSWER:**     Defendants solely admit that "poor communication" was documented as one of the reasons supporting Plaintiff's dismissal, but deny Plaintiff's dismissal was in any way related to Plaintiff's disability and deny the remaining allegations in paragraph 62 of the Complaint.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
### FIFTH AND FOURTEENTH AMENDMENT
### (Against Individual Defendants)

63.     Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

**ANSWER:**     Defendants incorporate their answers to each previous paragraph of this complaint by reference herein.

64.     The Fifth and Fourteenth Amendments of the U.S. Constitution provides, in pertinent part, that "no person shall be deprived of life, liberty, or property without due process of law."

**ANSWER:**     Admitted.

65.     As such, Plaintiff was entitled to a fair and impartial investigation of the allegations lodged against him in accordance with the policies established concerning removal from a field work placement.

**ANSWER:**     Defendants solely admit Plaintiff's removal from a field work placement was to be conducted in accordance with established policies, but deny the remaining allegations in paragraph 65 of the Complaint.

66.     The Defendants were aware that Plaintiff was entitled to a fair and impartial determination of the merits of the charges against Plaintiff.

**ANSWER:**     Defendants solely admit Plaintiff's removal from a field work placement was to be conducted in accordance with established policies, but deny the remaining allegations in paragraph 66 of the Complaint.

67.     Plaintiff was dismissed from his fieldwork site as a result of an arbitrary evaluation of his conduct that was not brought to Plaintiff's attention until he was dismissed.

**ANSWER:**     Denied.

68.     Further Plaintiff was dismissed on conduct that was exclusive only to him as his supervisor informed him that if she had worked with him before, his lateness would not be an issue.

**ANSWER:**     Denied.

69.     Plaintiff has been denied his due process rights by Defendant in violation of the Fifth and Fourteenth Amendments in that:

      a.   Thayyil was treated unfairly in the academic decision process and was dismissed from the OT program in an arbitrary and capricious manner. He was given no

notice of poor performance until he had been at the placement for over four weeks.

b. Thayyil was not given notice of grounds for dismissal until he received the letter that he was removed from the program.

c. Thayyil did not receive the benefit of a hearing before his punishment of dismissal was imposed.

d. Thayyil's dismissal was based on his decision to quarantine during the COVID-19 pandemic and had no basis in fact.

**ANSWER:**   Denied.

70.   As a direct and proximate result of Defendants' actions, Plaintiff has suffered emotional distress as well as serious threats to his chosen career as an Occupational Therapist.

**ANSWER:**   Denied.

70.   The actions of the Defendants violated the provisions of 42 U.S.C. §1983 in that they knowingly and willfully violated the civil rights of Plaintiff.

**ANSWER:**   Denied.

71.   The actions of the Defendants violated the provisions of 42 U.S.C. §1983 in that they knowingly and willfully violated the civil rights of Plaintiff.

**ANSWER:**   Denied.

**SECOND CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Against ISU)**

72.   Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

**ANSWER:**   Defendants incorporate their answers to each previous paragraph of this complaint by reference herein.

19

73.    Plaintiff and Defendant entered into a contract by which Defendant was offered admission to ISU's Occupational Therapy Program and for which Plaintiff accepted ISU's offer and attended ISU's Occupational Therapy program.

**ANSWER:**    Defendants solely admit Plaintiff was offered admission to ISU's Occupational Therapy program and that Plaintiff accepted ISU's offer and attended ISU's Occupational Therapy program. Defendants deny the remaining allegations in paragraph 73 of the Complaint.

74.    There was a mutual exchange of consideration by which Plaintiff attended the University involving payments and expenditure of time and ISU made its services available to Plaintiff including educational opportunities.

**ANSWER:**    Defendants solely admit Plaintiff attended ISU, ISU provided educational opportunities to Plaintiff, and payments were made to ISU. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 74 and, therefore, deny the same.

75.    As part of the contract was the existence of policies set forth by ISU. As a condition of attending ISU, Plaintiff and ISU were both expected to be bound by those policies, included within those policies were policies concerning adequate grounds for dismissal as well as disability services.

**ANSWER:**    Defendants solely admit that, as a condition of attending ISU, Plaintiff was expected to comply with certain policies, including policies that set out grounds for dismissal and addressed disability services. Defendants deny the remaining allegations in paragraph 75 of the Complaint.

76.     These policies were part of the bargain between Plaintiff and ISU. Without agreeing to abide by these policies, Plaintiff would not have been permitted to attend ISU.

**ANSWER:**   Defendants solely admit Plaintiff was expected to comply with ISU policies and that failure to comply could result in dismissal from ISU. Defendants deny the remaining allegations in paragraph 76 of the Complaint.

77.     Defendants breached the contract as it failed to investigate grounds for Plaintiff's dismissal in a fair, nonarbitrary way.

**ANSWER:**   Denied.

78.     Defendants also breached the contract by not properly providing Thayyil with services related to his disability.

**ANSWER:**   Denied.

79.     As a result of Defendant's breach of the contract, Plaintiff has been damaged in that he has been forced to expend significant time and resources defending the allegations that resulted in his dismissal.

**ANSWER:**   Denied.

### THIRD CAUSE OF ACTION
### VIOLATION OF TITLE II ADA
### (Against all Defendants)

80.     Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

**ANSWER:**   Defendants incorporate their answers to each previous paragraph of this complaint by reference herein.

81.     Plaintiff suffers from a chronic mental health condition as a result of being diagnosed with social anxiety.

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 and, therefore, deny the same.

82.    Plaintiff has a serious medical need, social anxiety, and is a "qualified individual with a disability" as defined in 42 U.S.C. §12131(2).

**ANSWER:**    Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 82 and, therefore, deny the same.

83.    The ADA and its implementing regulations require that alternative services and modifications be made to qualified individuals with a disability.

**ANSWER:**    Defendants solely admit the ADA and its implementing regulations prohibit discrimination against a qualified individual with a disability and denies the remaining allegations in paragraph 83 of the Complaint.

84.    At all relevant times, Defendants were fully aware of Plaintiff's disability.

**ANSWER:**    Denied.

85.    Plaintiff has been denied reasonable accommodations for his documented social anxiety disorder.

**ANSWER:**    Denied.

86.    As a result of Defendants [sic] denial of reasonable accommodations to Plaintiff, Defendants violated the ADA by discriminating against Plaintiff in several ways, including without limitation, the following:

   a.   Failing to recognize that Plaintiff had an anxiety disorder due to social anxiety when ISU was on notice of his disability.

   b.   Failing to provide counseling to Plaintiff to assist with his disability.

22

     c.  Failing to provide Plaintiff with more time to complete documentation and other clinic assignments.

     d.  Denying Plaintiff the equal/same opportunity to receive an education as a medical student as those without a disability.

**ANSWER:**   Denied.

87.    Defendants have discriminated against Plaintiff by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1).

**ANSWER:**   Denied.

88.    Defendants [sic] inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate employing 42 U. S. C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

**ANSWER:**   Denied.

89.    As a direct and proximate result of Defendants' unlawful discrimination and refusal to provide reasonable accommodations, Plaintiff has sustained and continues to sustain injuries and damages.

**ANSWER:**   Denied.

### FOURTH CAUSE OF ACTION
### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT
### (Against all Defendants)

90.    Plaintiff incorporates by reference each previous paragraph of this complaint as if fully copied and set forth at length herein.

**ANSWER:**   Defendants incorporate their answers to each previous paragraph of this complaint by reference herein.

91.     Section 504 of the Rehabilitation Act, 29 U.S.C § 794, bars all federally funded entities (governmental or otherwise) from discriminating based on disability. Section 504 states, in relevant part:

> No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

**ANSWER:**     Defendants solely admit paragraph 91 of the Complaint accurately states a portion of Section 504 of the Rehabilitation Act and the Section 504 bars federally funded entities from discriminating based on disability, but deny Plaintiff's rights thereunder have been violated in any way.

92.     Defendant ISU receives federal financial assistance and is covered by Section 504.

**ANSWER:**     Admitted.

93.     Plaintiff Thayil [sic] has an anxiety disorder, social anxiety, which interferes with his ability to effectively communicate certain issues and advocate for himself. Communication is a major life activity. Thus, social anxiety limits at least one of Plaintiff's major life activities.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth of allegations in paragraph 93 of the Complaint and, therefore, deny the same.

94.     Because social anxiety substantially limits at least one of Thayyil's major life activities, Plaintiff is an individual with a disability under the Rehabilitation Act.

**ANSWER:**     Defendants are without knowledge or information sufficient to form a belief as to the truth the allegations in paragraph 94 and, therefore, deny the same.

95.     Thayyil has demonstrated a history of success as a student with social anxiety and has even worked at other placement sites.

**ANSWER:**   Defendants solely admit Plaintiff worked at other placement sites while an ISU student, but deny the remaining allegations in paragraph 95 of the Complaint.

96.     The Rehabilitation Act and its implementing regulations require defendants administer programs/activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. 28 C.F.R. § 41.51 and 45 C.F.R § 84.4.

**ANSWER:**   Defendants solely admit 28 C.F.R. § 41.51(d) states "[r]ecipients [of federal funding] shall administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons" and 45 C.F.R. § 84.4 states "aids, benefits, and services, to be equally effective, are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." Defendants deny having violated Section 504 of the Rehabilitation Act in any way and deny any remaining allegations in paragraph 96 of the Complaint.

97.     Plaintiff has been denied and excluded from the benefits of Defendants' educational program because Defendants have failed to make reasonable accommodations that meet Plaintiff's needs.

**ANSWER:**   Denied.

98.     As a result of Defendants [sic] denial and exclusion of Plaintiff from receiving reasonable accommodations commensurate with his social anxiety, Defendants violated the Rehabilitation Act in several ways, including without limitation the following:

    a.   Failing to act when Defendants knew of Plaintiff's social anxiety

    b.   Failing to provide Plaintiff reasonable options to combat social anxiety during his placement such as more time to complete documentation and turn in assignments.

    c.   Failing to provide counseling to Plaintiff to assist with his disability.

    d.   Denying Plaintiff the equal/same opportunity to receive an education as a medical student [sic] as those without a disability.

**ANSWER:**   Denied.

99.    As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has sustained and will continue to sustain injuries and damages.

**ANSWER:**   Denied.

**RELIEF REQUESTED**

100.    Wherefore the Plaintiff respectfully prays this Honorable Court will GRANT the following relief:

    a.   For declaratory relief that Defendants [sic] conduct violated Plaintiffs due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution

    b.   Award the Plaintiff compensatory, general, and special damages as appropriate and as permitted by law.

    c.   Award the Plaintiff punitive damages as appropriate and as permitted by law.

    d.   Award the Plaintiff costs, fees, and expenses as appropriate.

    e.   Grant the Plaintiff injunctive relief as appropriate.

   f. Provide any other Relief this Court might deem fair, just, and equitable

**ANSWER:** Defendants deny Plaintiff is entitled to any of the relief requested above.

**DEFENSES AND AFFIRMATIVE DEFENSES**

Defendants, for additional defenses to Plaintiff's Complaint, alleges and state as follows:

1. Defendants deny every allegation, whether expressed or implied, that is not unequivocally or specifically admitted in this Answer.

2. One or more of Plaintiff's counts fail, in whole or in part, to state a claim for which relief may be granted, including but not limited to Plaintiff's Due Process and Breach of Contract claims.

3. At all times, Defendants acted in accordance with their rights and obligations under any applicable law or rule.

4. Defendants acted in good faith at all times, and all actions taken with respect to Plaintiff, including his dismissal from Indiana State University, were legitimate, lawful, and non-discriminatory.

5. Plaintiff's claims are barred because Plaintiff did not suffer a constitutional deprivation as a result of a policy, custom, practice or usage or a decision by a final policymaker sufficient to invoke governmental entity liability.

6. Defendants assert the affirmative defenses of any and all immunity defenses including, but not necessarily limited to, absolute immunity, sovereign immunity, governmental immunity, official immunity, quasi-official immunity, qualified immunity, quasi-judicial immunity, quasi-legislative and limited immunity provided them under the federal constitution, the state constitution, federal or state statutes, and/or federal or state common law as a complete bar to the claims made against Defendants. This includes immunity under the Eleventh

Amendment to the U.S. Constitution form the claims raised in Counts I and III of Plaintiff's Complaint.

7.      Plaintiff may have failed to mitigate his damages, if any.

8.      Defendants do not consent to trial by jury of any issue not required to be tried by a jury, including the determination of any equitable remedy.

9.      Defendants reserve the right to amend this Answer and to assert additional defenses as they may arise in the course of investigation and discovery and further incorporates all defenses available under Fed. R. Civ. P. 8(c) as if fully set forth herein.

WHEREFORE, Defendants, by counsel, request Plaintiff take nothing by way of his Complaint, that the Complaint is dismissed, and that the Court award Defendants costs and all other just and proper relief.

Date:   <u>April 16, 2021</u>                          Respectfully Submitted,

*/s/ Amy Steketee Fox*

Amy Steketee Fox, Atty No. 25112-53
CHURCH CHURCH HITTLE + ANTRIM
Lincoln Tower, Suite 548
116 East Berry Street
Fort Wayne, Indiana 46802
Phone: 260-428-2207    Fax: 317-773-5320
afox@cchalaw.com

Kevin S Smith, Atty. No. 20379-49
CHURCH CHURCH HITTLE + ANTRIM
Two North Ninth Street
Noblesville, IN 46060
Phone: (317)773-2190
Fax: (317)572-1609
KSmith@cchalaw.com

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on April 16, 2021, a true and exact copy of the foregoing was filed electronically via the Court's Electronic filing system.  Notice of this filing was sent to the following by operation of the Court's electronic filing:

Keith Altman
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road
Suite 375
Farmington Hills, MI 48334
kalthman@lawampmmt.com
ecf@lawampmmt.com
Fortville, IN 46040

*/s/ Amy Steketee Fox*
Amy Steketee Fox

29